683 A.2d 919

**In the Interest of B.C.**

**Appeal of B.C.**

Superior Court of Pennsylvania.

Argued April 9, 1996.

Filed Oct. 10, 1996.

Paul M. George, Assistant Public Defender, Philadelphia, for appellant.

Mary L. Porto, Assistant District Attorney, Philadelphia, for Commonwealth, participating party.

Before CIRILLO, President Judge Emeritus, and BECK, J., and CERCONE, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

Appellant, B.C., was adjudicated delinquent for possessing a controlled substance [1] following the denial of his motion to suppress evidence of thirty-three packets of crack cocaine. B.C. was placed on intensive drug and alcohol probation. In this appeal, B.C. alleges that the trial court erred in denying his motion to suppress because: (1) there was insufficient

1. In violation of section 780–113(a)(16) of the Controlled Substance, Drug, Device and Cosmetic Act.

justification for the initial *Terry* [2] stop; (2) the "frisk" exceeded the scope permitted by the "plain feel" doctrine articulated in *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); and (3) the *Dickerson* "plain feel" doctrine violates this Commonwealth's fundamental commitment to privacy under Article I, Section 8 of the Pennsylvania Constitution. We disagree with B.C. and, therefore, affirm.

At the outset, we reiterate that on review of an order denying a motion to suppress evidence, this court must determine whether the factual findings, inferences and legal conclusions of the trial court are supported by the record. *Commonwealth v. Fitzpatrick,* 446 Pa.Super. 87, 666 A.2d 323 (1995). We may only consider the evidence of the Commonwealth's witnesses, and so much of the evidence presented by the defendant, which remains uncontradicted when fairly read in the context of the record as a whole. *Id.* The suppression court has exclusive province to determine the credibility of witnesses and the weight accorded their testimony. *Id.* If the record supports the factual findings of the trial court, we are bound by such findings and may reverse only for an error of law. *Id.*

At the January 17, 1995 suppression hearing before the Honorable Sheldon J. Jelin, B.C. presented no evidence. The sole Commonwealth witness was Police Officer Jose Perez. The suppression court found Officer Perez' testimony credible and concluded that the officer had stated enough facts to warrant briefly detaining the suspect in order to investigate the situation, to conduct the pat down for weapons, and to seize the contraband.

The following uncontradicted facts of record support the suppression court's conclusion: At approximately ten o'clock a.m. on August 7, 1994, Officer Perez was on routine patrol in the area of Master and Myrtlewood Streets in Philadelphia. As he stopped his marked police vehicle at the intersection and looked down the 1400 Block of Myrtlewood Street, Officer Perez observed B.C. standing approximately 70 feet away on

2. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

the sidewalk. Officer Perez watched B.C. remove a clear plastic sandwich bag that "had an orange-tint to it" from the waistband of his pants and show it to a woman companion. "The orange [tint]," the officer clarified, "came from the small packets inside the bag." Officer Perez testified that "when I saw the plastic baggie, from my experience I knew it to be narcotics, especially when I saw him retrieve it from his waistband." The officer then drove around the block, approached B.C., and conducted a pat-down search for weapons. During the pat-down, no weapon was found, however, when the officer reached the front area of B.C.'s waistband, he felt the bulge from the plastic bag. Officer Perez explained that when he felt something during a pat down, he would give a slight squeeze, and that "when you feel down for the baggie with the packets in there, it's like—just like a small bulge in there, which I felt several hundred times. So from my experience I knew what it was." Officer Perez then removed the baggie, which contained thirty-three orange-tinted packets of crack cocaine. Officer Perez testified that he was a four and one-half year veteran of the police force, and had participated in two hundred and sixty narcotics arrests in the previous year alone. The officer classified the 1400 block of Myrtlewood Street as a high drug-crime area, as he had made several drug-related arrests at the same location.

B.C. argues that the officer pointed to a very limited number of factors to support the decision to stop appellant. B.C. specifically claims that the officer did not see him conduct any kind of transaction, nor did the officer have any prior contact with appellant. B.C. also claims that simply because the area in which he was stopped was a "high crime area," the observation of the baggie alone was insufficient to create reasonable suspicion. The stop, he asserts, was unreasonable and, thus, unconstitutional.

As this court succinctly noted, "[i]t is hornbook law that the [F]ourth [A]mendment of the United States Constitution as well as Article I, § 8 of the Pennsylvania Constitution

protect citizens from unreasonable searches and seizures." [3] *Commonwealth v. Baer,* 439 Pa.Super. 437, 440–41, 654 A.2d 1058, 1059 (1994). *See also Commonwealth v. Reiss,* 440 Pa.Super. 151, 655 A.2d 163 (1995). Warrantless searches and seizures are unreasonable per se, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One such exception, the *Terry* "stop and frisk," permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." *Fitzpatrick,* 446 Pa.Super. at 91, 666 A.2d at 325 (citation omitted); *Commonwealth v. Hicks,* 434 Pa. 153, 158, 253 A.2d 276, 279 (1969).

 In order to be constitutionally reasonable, the police officer must articulate specific facts which, "in conjunction with rational inferences deriving therefrom," would warrant the initial stop. *Commonwealth v. Arch,* 439 Pa.Super. 606, 612, 654 A.2d 1141, 1143 (1995) (quoting *Commonwealth v. Prengle,* 293 Pa.Super. 64, 68, 437 A.2d 992, 994 (1981)). Although the officer's conclusion cannot be based on an "unparticularized suspicion" or "hunch," *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883, the reasonable suspicion which justifies the brief detention of a person is a less demanding standard and can be established from less reliable information than that required to show probable cause. *Commonwealth v. Campbell,* 418 Pa.Super. 391, 398–400, 614 A.2d 692, 696 (1992) (citing *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110

**3.** The U.S. Constitution states that

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Pennsylvania Constitution recites the same constitutional standard as its federal counterpart. *See* Pa. Const. Art. 1, § 8. *See also Commonwealth v. Galadyna,* 248 Pa.Super. 226, 231, n. 1, 375 A.2d 69, 72, n. 1 (1977).

L.Ed.2d 301 (1990)). *See also United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In deciding whether reasonable suspicion of criminal activity was present, courts must take into account "the totality of the circumstances—the whole picture." *Campbell,* 418 Pa.Super. at 399, 614 A.2d at 697 (citing *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621 (1981)). We do not view the situation as an ordinary citizen might, but instead "focus on the circumstances as seen through the eyes of the trained officer." *Commonwealth v. Quiles,* 422 Pa.Super. 153, 167, 619 A.2d 291, 298 (1993) (*en banc*) (citation omitted). An officer who makes a valid investigatory stop may perform a limited search or "frisk" of the suspect for weapons, if he reasonably believes that his safety or the safety of others is threatened. *Arch,* 439 Pa.Super. at 612-14, 654 A.2d at 1144 (citing *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883). *See also Dickerson, supra.* If either the search or the seizure is found to be unreasonable, however, the remedy is to exclude all evidence derived from the illegal governmental activity. *Commonwealth v. Gibson,* 536 Pa. 123, 638 A.2d 203 (1994).

The analysis of the totality of the circumstances surrounding an investigatory stop when the police officer observes citizens engaged in suspicious activity on public thoroughfares is a difficult one. *Commonwealth v. Agnew,* 411 Pa.Super. 63, 600 A.2d 1265 (1991). Although specifically dealing with probable cause, the Pennsylvania Supreme Court, in *Commonwealth v. Lawson,* 454 Pa. 23, 309 A.2d 391 (1973), enumerated some of the factors which should be considered, stating:

All of the detailed facts and circumstances must be considered. The time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where items were kept by one of the sellers is important; the movement and manners of the parties are important.

\* \* \* \* \* \*

It is difficult to isolate any one fact or circumstance and assign to it a given weight.

*Id.* at 28–29, 309 A.2d at 394.

In *Commonwealth v. Burnside,* 425 Pa.Super. 425, 625 A.2d 678 (1993), this court found that the police had probable cause to arrest the defendant after they observed him in a "high drug area" holding small blue packets known for carrying drugs. The *Burnside* court stated that "while a particular type of container may have lawful purposes, the circumstances under which a trained narcotics detective views its use may be tantamount to a view of actual contraband." *Id.* at 430, 625 A.2d at 681. The court relied on the following facts to support its holding: the officer involved with the arrest was familiar with the area and knew it to be the site of prior drug transactions; the officer had made forty previous drug arrests; and, the officer testified that he knew the packets he observed were the type used by local drug dealers. *Id. See also Commonwealth v. Brinkley,* 423 Pa.Super. 289, 620 A.2d 1226 (1993) (officer had probable cause to arrest when he observed defendant holding a bag with white powder at eye level); *Commonwealth v. Mallory,* 418 Pa.Super. 614, 618, 614 A.2d 1174, 1177 (1992), *allocatur denied,* 533 Pa. 632, 621 A.2d 578 (1993) (probable cause to arrest when defendant was observed standing near drug dealer and putting plastic baggie in his pants).

■ Here, Officer Perez needed only reasonable suspicion, rather than the more stringent standard of probable cause, in order to stop and investigate the defendant. *Fitzpatrick, supra.* The officer was familiar with the area, had made over two hundred drug-related arrests in the previous year, had personally observed the baggie which contained orange packets, and had watched B.C. remove the baggie from his waistband and display it to another person. Officer Perez clearly articulated specific facts to support his suspicion that B.C. was in possession of narcotics. *Arch, supra.* When evaluating the totality of circumstances comprising reasonable suspicion or probable cause, this court will not ignore the

ability of experienced police officers to draw deductions and inferences which other persons might not make. *See Commonwealth v. Epps*, 415 Pa.Super. 231, 608 A.2d 1095 (1992); *see also Commonwealth v. Lopez*, 444 Pa.Super. 441, 664 A.2d 154 (1995). Thus, we find the initial stop was justified.

▮ Having concluded that the stop was reasonable, we further find that frisking B.C. for weapons was proper. This court has taken judicial notice that drug dealers are often armed and dangerous. *See Commonwealth v. Patterson*, 405 Pa.Super. 17, 591 A.2d 1075 (1991). The suppression court determined that "[b]ecause Officer Perez believed he was witnessing a drug transaction, he had reason to believe the defendant may be armed and dangerous." The facts show that B.C. was in possession of a package typically used by dealers to carry drugs, which he retrieved from his waistband and displayed to a woman in a high drug-trafficking area. The totality of these circumstances, *Campbell, supra*, strongly suggest and support an inference, *Arch, supra*, that B.C. was involved as a seller instead of a casual user. It was reasonable in this situation for the officer to believe that B.C. might be armed, therefore, the weapons frisk was appropriate to ensure the officer's safety. *Patterson, supra.*[4]

B.C. next asserts that the evidence should be excluded because Officer Perez exceeded the permissible scope of a *Terry* frisk by squeezing the plastic baggie. The United States Supreme Court recently held that the Fourth Amendment permits police officers to seize non-threatening contraband discovered through the sense of touch while conducting a lawful weapons frisk, so long as the officers confine their search to the limits outlined in *Terry*. *Dickerson*, 508 U.S. at 366, 113 S.Ct. at 2132.

---

4. We also note that the fact that B.C. is a juvenile is irrelevant to determining the reasonableness of the officer's belief that the suspected individual is armed and dangerous. A cursory examination of the news will readily provide ample evidence that increasing numbers of our nation's youths are obtaining, carrying and using deadly weapons. The courts cannot afford to ignore the reality of the streets.

 By analogy to the plain view doctrine,[5] *Dickerson* authorized the seizure of non-threatening contraband detected by police officers through "plain feel" during a *Terry* frisk for weapons if:

> 1) the officer is lawfully in a position from which he can detect the presence of contraband;
>
> 2) the incriminating nature of the contraband must be **immediately apparent**; and
>
> 3) the officer has a lawful right of access to the object.

*Id.* at 375, 113 S.Ct. at 2136–37 (emphasis added). If, however, the officer lacks probable cause to believe an object felt during a pat-down is contraband without conducting some further search of the object, the "immediately apparent" requirement has not been met and the "plain feel" doctrine cannot justify its seizure.[6] *Id.* Furthermore, the Court recognized that the Fourth Amendment's requirement that the officer have probable cause to believe the item is contraband before seizing it ensures against excessively speculative seizures. *Id.* at 376, 113 S.Ct. at 2137.

Applying the newly adopted "plain feel" doctrine, the *Dickerson* Court, however, found the seizure of the contraband was unconstitutional. *Id.* at 379, 113 S.Ct. at 2139. There, the officer had determined that the lump was contraband only "after **squeezing, sliding, and otherwise manipulating the contents of the defendant's pocket—a pocket which the officer already knew contained no weapon.**" *Dickerson,*

**5.** Under the "plain-view" doctrine, officers may make a warrantless seizure of contraband found in plain view during a lawful search for other items. *See Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). In *Michigan,* the Supreme Court stated: "If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Id.* at 1050, 103 S.Ct. at 3481.

**6.** The U.S. Supreme Court had previously determined that "immediately apparent" means that the officer has probable cause to believe that the article is contraband without a further search. *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *Texas v. Brown,* 460 U.S. 730, 741–42, 103 S.Ct. 1535, 1542–43, 75 L.Ed.2d 502 (1983).

508 U.S. at 378, 113 S.Ct. at 2138 (emphasis added). The officer's continued exploration of respondent's pocket, after concluding that it did not contain any weapons, was unrelated to "[t]he sole justification of the search [under *Terry* ] . . . the protection of the police officer and others nearby." *Id.* (quoting *Terry,* 392 U.S. at 29, 88 S.Ct. at 1884). Since the incriminating character of the lump in defendant's pocket was not **"immediately apparent,"** the further search of defendant's pocket was constitutionally invalid and, therefore, the seizure of cocaine that followed was likewise unconstitutional. *Dickerson,* 508 U.S. at 379, 113 S.Ct. at 2139.

■ Unlike the particular facts in *Dickerson,* in the instant case the identity of the cocaine packets was **"immediately apparent"** to the officer *during* a constitutionally permissible pat-down. The following was elicited during cross-examination of Officer Perez:

Q. Okay. When you patted down through the pants, I guess you could feel the baggie; is that right?

A. Yes.

Q. Okay. And you had to take your fingers and play with it a little so you knew it was a baggie; is that right?

A. **I didn't play with it.** I came up to him. I patted— touched it. As soon as I felt it, I knew what it was. I reached in and I pulled it out.

Officer Perez went on to explain that his initial pat-down actually consisted of a squeeze:

A. [W]hen I pat somebody down, when I reach their pockets, I squeeze.

This testimony confirms that unlike the pat-down in *Dickerson,* here there was no **"sliding, and otherwise manipulating"** the baggie in order to ascertain its contents—Officer Perez immediately recognized that the bulge consisted of packets of a controlled substance. Other than the squeeze described, there is nothing in the record to suggest that Officer Perez further manipulated the bulge in order to determine its identity. This court has previously held that it is not improper to squeeze a suspect's clothing during a pat down. *See Commonwealth v. Johnson,* 429 Pa.Super. 158, 160, 631

A.2d 1335, 1336 (1993) (lawful pat down included crunching and squeezing). Furthermore, Officer Perez was still in the process of frisking the defendant for weapons; he had not already concluded that no weapons were present. Officer Perez was, therefore, both justified and duty-bound under *Dickerson* to seize such contraband.

We now address B.C.'s argument that the plain feel doctrine violates this Commonwealth's fundamental commitment to privacy under our state constitution.[7] Article 1, § 8 of the Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. I, § 8. Although the wording of this provision is nearly identical to the language of the Fourth Amendment to the United States Constitution, *see* note 2, *supra,* Article I, Section 8 creates an implicit right to privacy in this Commonwealth which extends to those areas where one has a "reason-

7. Our supreme court established a framework for state constitutional analysis in *Commonwealth v. Edmunds,* 526 Pa. 374, 390, 586 A.2d 887, 895 (1991). Litigants claiming greater rights under a provision of the Pennsylvania Constitution from those available under a corresponding provision of the United States Constitution should brief and analyze four factors: 1) the text of the state constitutional provision; 2) the history of the provision, including Pennsylvania case law; 3) related case law from other states; and 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence. *Id.* We note that the Pennsylvania Supreme Court recently explained that *Edmunds* does not *require* the litigants to brief and analyze these factors before a claim under the state constitution may be addressed, but rather "expresses the idea that it may be helpful to address the concerns listed." *Commonwealth v. White,* 543 Pa. 45, 50, 669 A.2d 896, 899 (1995).

In previous cases claiming on appeal that the plain feel doctrine violates the provisions of the Pennsylvania Constitution, this court found the claimant had failed to adequately brief the issue. *See Commonwealth v. Dorsey,* 439 Pa.Super. 494, 654 A.2d 1086 (1995); *In the Interest of S.D.,* 429 Pa.Super. 576, 633 A.2d 172 (1993). B.C has raised a valid claim and has adequately briefed the issue, hence, we will address it.

able expectation of privacy." *Commonwealth v. Blystone,* 519 Pa. 450, 463, 549 A.2d 81, 87 (1988). Although we can provide no less protection of individual rights than that required by the federal constitution, it is well settled that our courts are free to establish greater protection of such rights in the provisions of the Pennsylvania Constitution. *See Commonwealth v. Matos,* 543 Pa. 449, 453–54, 672 A.2d 769, 771–72 (1996); *Commonwealth v. Schaeffer,* 370 Pa.Super. 179, 536 A.2d 354 (1987). Pennsylvania courts, in comparison to federal courts, give greater weight to an individual's privacy interests when balancing the relative importance of privacy against the needs of law enforcement. *Commonwealth v. White,* 543 Pa. 45, 55–57, 669 A.2d 896, 902 (1995). "Article I, Section 8 of the Pennsylvania Constitution, as consistently interpreted by [Pennsylvania's appellate courts], *mandates greater need for protection from illegal government conduct offensive to the right of privacy." Schaeffer,* 370 Pa.Super. at 192, 536 A.2d at 360 (emphasis in original) (quoting *Commonwealth v. Sell,* 504 Pa. 46, 67, 470 A.2d 457, 468 (1983)).

In deciding whether our own constitution should be interpreted to provide broader protection of individual rights than those recognized under the federal constitution by the United States Supreme Court, we are guided by the fact that

> "[w]hile neither binding in a constitutional sense nor precedential in a jurisprudential one, [the United States Supreme Court's opinions] are entitled to whatever weight their reasoning and intellectual persuasiveness warrant. One would expect a state court to deal carefully with a Supreme Court opinion and to explain forthrightly why it found itself constrained to reason differently."

*Commonwealth v. DeJohn,* 486 Pa. 32, 44, 403 A.2d 1283, 1289 (1979) (quoting Falk, *The State Constitution: A More Than "Adequate" Nonfederal Ground,* 61 Calif.L.Rev. 273, 283–84 (1973)); *see also Schaeffer,* 370 Pa.Super. 179, 536 A.2d 354. The Supreme Court of Pennsylvania has further instructed that our state courts are to construe the Pennsylvania Constitution as providing greater rights than the federal constitution "only where there is a compelling reason to do so." *Commonwealth v. Gray,* 509 Pa. 476, 484–85, 503 A.2d 921, 926 (1985).

*See also In re S.D.,* 429 Pa.Super. at 585, 633 A.2d at 177 (1993) (Kelly, J., concurring).

██ B.C. argues that adoption of *Dickerson* as a matter of state constitutional jurisprudence would diminish the protection of a person's privacy which lies at the core of Article I, § 8. In *Dickerson,* however, the United States Supreme Court specifically addressed the concern regarding the doctrine's invasion of a legitimate expectation of privacy. The Court explained:

> If a police officer **lawfully** pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, **there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons**; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Dickerson,* 508 U.S. at 375–76, 113 S.Ct. at 2137 (emphasis added). The seizure of an item whose identity is already known occasions no further invasion of privacy. *Id.* at 377, 113 S.Ct. at 2137–38.

We find this reasoning persuasive. The plain feel doctrine applies only to contraband discovered through the sense of touch during a valid *Terry* frisk. *Dickerson,* 508 U.S. at 366, 113 S.Ct. at 2132. The police officer must have already and properly initiated physical contact with an individual suspected of being armed and dangerous. In *Commonwealth v. Dorsey,* 439 Pa.Super. 494, 654 A.2d 1086 (1995), this court reasoned that:

> Rejecting this doctrine under the Pennsylvania Constitution would not prevent individuals from being stopped and frisked, nor would it eliminate any touching to which they are already subject. Rejection of the doctrine would merely require an officer to ignore that which, as the result of training, experience, and common sense, is known to be contraband.

*Id.* at 501, 654 A.2d at 1089. It is unnecessary to reject the plain feel doctrine to protect the Commonwealth citizens'

privacy interests, especially when this protection is inherent within the doctrine's requirement that it must be immediately apparent that the object felt is contraband. *Id.*

The plain feel doctrine simply permits the officer to combine information gathered through his or her sense of touch with other elements comprising the totality of circumstances that have long provided probable cause for a warrantless arrest in Pennsylvania. *See Gray, supra; Commonwealth v. Leman-ski,* 365 Pa.Super. 332, 353, 529 A.2d 1085, 1095 (1987). Once the suspect has been arrested under this exception to the warrant requirement, the police officer may seize the contraband during the course of a full search incident to the lawful arrest. *See United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 471–72, 38 L.Ed.2d 427 (1973). The doctrine itself protects the privacy interests of Commonwealth citizens by limiting physical contact with the contraband to that permitted by a weapons frisk and by requiring that the nature of the object be immediately apparent. *Dickerson,* 508 U.S. at 375, 113 S.Ct. at 2136–37. We, therefore, see no reason to reject the plain feel doctrine under the Pennsylvania Constitution, since the doctrine through its own provisions protects the privacy interests of our citizens.

To date, the highest courts of only five states have considered whether the plain feel doctrine is valid as a matter of state constitutional law. The high courts of four of these states held that their state constitutions do not bar the seizure of contraband detected by touch. *See, e.g., People v. Champion,* 452 Mich. 92, 549 N.W.2d 849, 856–57 (1996); *State v. Trine,* 236 Conn. 216, 673 A.2d 1098, 1109 (1996); *People v. Mitchell,* 165 Ill.2d 211, 209 Ill.Dec. 41, 45, 650 N.E.2d 1014, 1018 (1995); *Commonwealth v. Crowder,* 884 S.W.2d 649, 652 (Ky.1994). New York, the only state so far to reject the plain feel doctrine on state constitutional grounds, did so before the U.S. Supreme Court decided *Dickerson. People v. Diaz,* 81 N.Y.2d 106, 595 N.Y.S.2d 940, 612 N.E.2d 298 (1993).

We find it instructive that two of these states have recognized, as does Pennsylvania, that their state constitutions

afford greater protection of privacy rights than that available under the Fourth Amendment to the United States Constitution. The Illinois Supreme Court, in adopting the plain feel doctrine, noted that the doctrine involved "no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *Mitchell,* 209 Ill.Dec. at 48, 650 N.E.2d at 1021. Similarly, the Connecticut Supreme Court remarked, "[t]he personal intrusiveness of a lawfully circumscribed pat down search is not exacerbated by the discovery of non-threatening contraband rather than weapons." *Trine,* 673 A.2d at 1108. Both Michigan and Kentucky adopted the plain feel doctrine without significant analysis of their respective state constitutions.

The New York Court of Appeals, the highest court of the state, held that there was no plain feel exception to the warrant requirement under *either* the federal or state constitutions. *Diaz,* 595 N.Y.S.2d at 944, 612 N.E.2d at 302 n. 2. The court reasoned that because touch is an inherently unreliable sense, a police officer would only be able to establish an object's identity after "pinching, squeezing or probing beyond the limited intrusion allowed under *Terry.*" *Id.*

We find Justice White's reasons for rejecting these concerns persuasive:

> First, *Terry* itself demonstrates that the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure. The very premise of *Terry,* after all, is that officers will be able to detect the presence of weapons through the sense of touch.... Even if it were true that the sense of touch is generally less reliable than the sense of sight, that only suggests that officers will less often be able to justify seizures of unseen contraband.

*Dickerson,* 508 U.S. at 376, 113 S.Ct. at 2137. We emphasize, along with Justice White's observation, that any manipulation of suspected contraband is limited to that consistent with a weapons frisk and cannot, therefore, exceed the limits imposed by *Terry. Id.* at 378, 113 S.Ct. at 2138–39. Our examination of the decisions of our sister states provides no persuasive

argument that the individual's privacy interest would be furthered by rejection of the plain feel doctrine under our state constitution.

In assessing the policy considerations, it is analytically important to remember that jurisprudence under both Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the U.S. Constitution seeks to strike the appropriate balance between preserving the privacy interests of citizens and permitting law enforcement officials to act without hamstringing restraints. *See Campbell,* 418 Pa.Super. at 399, 614 A.2d at 696. Federal decisions, however, tend to lend greater weight to the interests of law enforcement, while the decisions of our Commonwealth courts more often emphasize the preservation of individual privacy. *See White, supra; Melilli,* 521 Pa. at 412, 555 A.2d at 1258; *see also Matos, supra* (holding that definition of "seizure" under state constitution differs from that under U.S. Constitution); *Commonwealth v. Martin,* 534 Pa. 136, 626 A.2d 556 (1993) (state constitution provides greater protection against canine sniff search than does U.S. Constitution).

This differing perspective is clearly exemplified in the treatment accorded the exclusionary rule in each jurisdiction. Federal courts treat the exclusionary rule as a device for deterring *future* police misconduct. *Edmunds,* 526 Pa. at 394, 586 A.2d at 897 (citing *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974)). Pennsylvania state courts, in contrast, use the rule to remedy *present* violations of individual privacy rights. *Id.*

At first, this may appear to be a distinction without difference because punishing present violations certainly deters future misconduct, while excluding evidence to discourage future abuses clearly also remedies the violation at hand. The very real consequences of this distinction between federal and state policies is evidenced by the federal courts ready acceptance of the "good faith" exception to the exclusionary rule and the rejection of this same exception by Pennsylvania's Supreme Court. *Edmunds, supra.* From the federal viewpoint, excluding evidence obtained by the police in "good faith"

would have no effect on future misconduct, for by definition, if the evidence were obtained in good faith, then the police were unaware that their actions were inappropriate. *Id.* Because Pennsylvania courts use the exclusionary rule to correct specific violations of individual privacy rights, our supreme court found it irrelevant that the officer acted unintentionally and, therefore, rejected the "good faith" exception. *Id.*

We find no similar policy basis for rejecting the plain feel doctrine. A police officer may conduct a "stop and frisk" of an individual "for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest" as long as the officer is "able to point to specific and articulable facts which give rise to reasonable suspicion of criminal activity." *Baer,* 439 Pa.Super. at 441, 654 A.2d at 1059 (quoting *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880). So long as the weapons frisk is proper under this standard, we can identify no privacy interest that would be furthered by excluding evidence detected through the sense of touch from consideration in the "totality of circumstances" that converts reasonable suspicion into probable cause.[8] We, therefore, hold that the plain touch doctrine is consistent with the protections afforded citizens of Pennsylvania by Article I, § 8 of the Pennsylvania Constitution.

Order affirmed.

CERCONE, President Judge Emeritus, files a Concurring Opinion.

**8.** Appellant classifies the plain feel doctrine as an exception to the warrant requirement. We reject this classification. The Fourth Amendment requires that a police officer "have probable cause to believe that an item is contraband before seizing it." *Dickerson,* 508 U.S. at 376, 113 S.Ct. at 2137. Before a seizure without a warrant is justified, however, there must exist an independent exception to the warrant requirement, such as a exigent circumstances or the seizure of evidence incident to a lawful arrest. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plain view alone is never enough to justify a warrantless seizure of evidence); *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (where officer already had a lawful right of access to the object, warrantless seizure of evidence by police officer who had probable cause to believe object in plain view was contraband or evidence of a crime was justified by exigent circumstances).

CERCONE, President Judge Emeritus, concurring.

Although I concur in the result reached by the majority, I write separately to caution our courts against expanding the circumscribed boundaries of permissible searches as envisioned by the Court in *Terry v. Ohio* and *Minnesota v. Dickerson.*