J-A21010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWARD J. STRICKLAND, | |
| Appellant | No. 1493 EDA 2014 |

Appeal from the Judgment of Sentence Entered May 13, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0013882-2011

BEFORE:  BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED NOVEMBER 01, 2016**

Appellant, Edward J. Strickland, appeals from the judgment of sentence of 4 to 8 years' incarceration, followed by 5 years' probation, imposed after he was convicted of possession of a firearm by a person prohibited, 18 Pa.C.S. § 6105(a)(1), carrying a firearm without a license, 18 Pa.C.S. § 6106(a)(1), and carrying a firearm in public in Philadelphia, 18 Pa.C.S. § 6108.  Appellant solely challenges the court's denial of his pretrial motion to suppress.  After careful review, we affirm.

Appellant was arrested and charged with the above-stated firearm offenses on November 23, 2011.  Prior to trial, he filed a motion to suppress the seized firearm, contending that the arresting police officer did not possess reasonable suspicion to conduct an investigative detention and pat-down of his person, during which the officer discovered a gun in his

waistband. A suppression hearing was conducted on November 15, 2012, and the court subsequently issued an order denying Appellant's motion to suppress. His case proceeded to a non-jury trial in November of 2012. At the conclusion thereof, the court convicted Appellant of the three firearm offenses listed *supra*. On May 13, 2014, he was sentenced to an aggregate term of 4 to 8 years' imprisonment, followed by 5 years' probation.

Appellant filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court issued a responsive opinion on September 21, 2015. Herein, Appellant presents one question for our review:

> Did not the trial court err in denying the motion to suppress physical evidence, insofar as there was no reasonable suspicion that criminal activity was afoot or that [A]ppellant was armed and dangerous at the time he was stopped and frisked?

Appellant's Brief at 3.

To begin, we note that,

> [i]n reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. We accept the suppression court's factual findings which are supported by the evidence and reverse only when the court draws erroneous conclusions from those facts.

**Commonwealth v. Hoopes**, 722 A.2d 172, 174-75 (Pa. Super. 1998).

In this case, Appellant challenges the arresting officer's reasonable suspicion to conduct an investigative detention and subsequent pat-down of

his person. We begin by summarizing the evidence presented at the suppression hearing.

Officer Janine Caserta of the Philadelphia Police Department testified that at approximately 10:45 a.m. on November 23, 2011, she was on routine patrol when she received a radio dispatch of an attempted break-in at 2552 South 62nd Street. N.T. Suppression Hearing, 11/15/12, at 4, 5-6. Officer Caserta testified that that address is in a "very high-crime area[,]" and that "[a]t least once, maybe twice, a week there is crime -- some sort of crime or complaint that has happened in that area." *Id.* at 15. Officer Caserta testified that she had worked in that area for ten years, and regularly patrolled there, as she was doing that day. *Id.* at 16.

Along with the address of the break-in, the radio dispatch informed Officer Caserta that the break-in was reported to 911 by a female caller who lived on the first floor of that residence. *Id.* at 10. The 911-caller told dispatch that two men had attempted to enter her residence through the front window. *Id.* Officer Caserta testified that the caller provided the following description of those men: "[T]wo black males. One black male wearing a tan leather jacket, covering a red hoodie. The second black male wearing all black; meaning black pants, black jacket, black hat." *Id.* at 7.

Officer Caserta testified that she activated her lights and sirens and arrived at the address in "30 seconds." *Id.* at 12. There, she saw Appellant and another man standing "a few feet away from the actual location" of the

alleged break-in. *Id.* at 7. Officer Caserta observed that Appellant and his companion "both fit the clothing description exactly." *Id.* at 7.

At that point, Officer Caserta exited her car, approached Appellant and his companion, and asked them, "what's up?" *Id.* at 13, 14. Appellant's companion replied that he was dropping off diapers to the mother of his child. *Id.* at 15. Officer Caserta stated that she then asked Appellant and the other man "to walk over to a vehicle, and place their hands on the car[,]" as "they were going to be investigated." *Id.* Officer Caserta testified that Appellant "was a little fidgety[,]" and rather than keeping his hands on the car, he kept "turning around, [and] making sudden movements." *Id.* at 15.

At the same time Officer Caserta was detaining Appellant, another officer, Officer Monroe, detained and frisked Appellant's companion. *Id.* at 17. During that frisk, Officer Monroe discovered a handgun in that individual's right front pocket. *Id.* at 18. Officer Caserta testified that "[o]nce Officer Monroe notified [her] of the handgun, that's when [she] placed [Appellant] in handcuffs" and explained to Appellant that she was doing so for officer safety. *Id.* Officer Caserta stated that because Appellant's cohort was armed, she suspected "that there may be another gun." *Id.* at 19. Accordingly, out of concern for her, Officer Monroe's, and Appellant's safety, she patted Appellant down. *Id.* at 20. During the pat-down, Officer Caserta felt in Appellant's waistband what she immediately knew to be the handle of a gun, based on her experience in handling

- 4 -

firearms.   *Id.* at 21-22.   Officer Caserta then "recovered a .38 caliber revolver with a long barrel, a pearl handle.  And it was loaded with six live rounds." *Id.* at 20-21.

Based on this evidence, the trial court denied Appellant's motion to suppress, concluding that Officer Caserta possessed reasonable suspicion to justify Appellant's detention and pat-down.[1]   Before addressing Appellant's arguments challenging the court's ruling, we note the following:

> In *Terry v. Ohio*, [392 U.S. 1 (1968)], the United States Supreme Court created an exception to the Fourth Amendment requirement that police have probable cause before conducting a search of a citizen. The *Terry* exception permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." *Commonwealth v. Fitzpatrick*, 446 Pa.Super. 87, 666 A.2d 323, 325 (Pa. Super. 1995) (citation omitted).

---

[1] The trial court, the Commonwealth, and Appellant all accept that Appellant was detained by Officer Caserta when she instructed him to place his hands on the vehicle.  We agree that the officer's command was a show of authority that restrained Appellant's movement, and  that a reasonable person in Appellant's position would not have felt free to leave.  Thus, an investigative detention occurred. *See Commonwealth v. Lyles*, 54 A.3d 76, 79 (Pa. Super. 2012) ("To guide the critical inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave.  In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained.") (citation omitted). We also note that Appellant does not argue that the investigative detention evolved into the functional equivalent of an arrest when Officer Caserta handcuffed him prior to frisking him.

In order for a stop and frisk to be reasonable, the police conduct must meet two separate and distinct standards. ***Commonwealth v. Martinez***, 403 Pa.Super. 125, 588 A.2d 513, 514 (Pa. Super. 1991), *appeal denied,* 530 Pa. 653, 608 A.2d 29 (1992). Specifically, the police officer must have a "reasonable, articulable suspicion" that criminal activity may be afoot and that the suspect may be armed and dangerous. ***Commonwealth v. Shelly***, 703 A.2d 499, 503 (Pa. Super. 1997), *appeal denied,* 555 Pa. 743, 725 A.2d 1220 (1998). ***See also Commonwealth v. Robinson***, 410 Pa.Super. 614, 600 A.2d 957, 959 (Pa. Super. 1991), *appeal denied,* 533 Pa. 599, 617 A.2d 1273 (1992).

In addressing the level of suspicion that must exist, this Court previously stated that "it is a suspicion that is less than a preponderance of the evidence but more than a hunch." ***Shelly***, 703 A.2d at 503. ***See also Commonwealth v. Epps***, 415 Pa.Super. 231, 608 A.2d 1095, 1096 (Pa. Super. 1992). In deciding whether reasonable suspicion was present, courts must take into account "the totality of the circumstances—the whole picture." ***In the Interest of B.C.,*** 453 Pa.Super. 294, 683 A.2d 919, 923 (Pa. Super. 1996), *appeal granted,* 557 Pa. 643, 734 A.2d 392 (1998). These circumstances are to be viewed through the eyes of a trained officer, not an ordinary citizen. ***Commonwealth v. Fink***, 700 A.2d 447, 449 (Pa. Super. 1997), *appeal denied,* 552 Pa. 694, 716 A.2d 1247 (1998). "We cannot evaluate the totality of the circumstances through the grudging eyes of hindsight nor in terms of library analysis, but as understood by those versed in the field of law enforcement." ***Shelly***, 703 A.2d at 503 (citations omitted).

***Commonwealth v. Jackson***, 907 A.2d 540, 543 (Pa. Super. 2006).

In this case, Appellant contends that the trial court's decision that Officer Caserta possessed reasonable suspicion to justify his seizure and pat-down was legally erroneous. He stresses that at the time of the stop, he was not doing anything illegal or suspicious. Appellant concedes that his clothing matched the description provided by the 911-caller; he argues, however, that "the identity and reliability of the caller were not known" to

Officer Caserta at the time she detained him. Appellant's Brief at 7, 11. Thus, according to Appellant, the uncorroborated tip from the anonymous 911-caller did not carry sufficient indicia of reliability to justify his detention. *Id.* at 11. In support of this argument, Appellant discusses several cases where this Court, or our Supreme Court, found insufficient reasonable suspicion to uphold investigative detentions premised only on uncorroborated, anonymous tips. *See, e.g.*, *Commonwealth v. Hawkins*, 692 A.2d 1068, 1070-71 (Pa. 1997) ("If the police respond to an anonymous call that a particular person at a specified location is engaged in criminal activity, and upon arriving at the location see a person matching the description but nothing more, they have no certain knowledge except that the caller accurately described someone at a particular location. … [I]n the typical anonymous caller situation, the police will need an independent basis to establish the requisite reasonable suspicion.").

We need not delve into the particulars of Appellant's argument, or discuss *Hawkins* and the other cases on which he relies, as it is apparent that Appellant's claims are premised wholly on his conclusion that the 911-caller in this case was anonymous. Our review of the record, and pertinent legal authority, demonstrates that Appellant is incorrect. Although the 911-caller was not specifically named in the radio dispatch heard by Officer Caserta, nor identified by name at the suppression hearing, the police (including Officer Caserta) knew the 911-caller's address, gender, and that she lived on the first floor of the residence. In other words, the police could

locate the 911-caller.[2]  Therefore, it is apparent that the 911-caller placed herself at a risk of prosecution if she was falsely claiming that two men, matching the description of Appellant and his companion, had attempted to break-in to her residence.  *See Commonwealth v. Jackson*, 698 A.2d 571, 574 (Pa. 1997) ("[A] known informant places himself or herself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk.").  Based on these facts, the 911-caller was not 'anonymous,' as Appellant claims.

Because the 911-caller was known to police, her report "carried enough indicia of reliability for the police to conduct a *Terry* search, even though the same tip from an anonymous informant would likely not have done so." *Id.*  Indeed, as the Commonwealth points out, our Supreme Court has declared that, "the fact that the police radio report came from the crime victim herself, not from an anonymous source, imparted a *high degree of reliability* to the report."  *In re D.M.*, 727 A.2d 556, 588 (Pa. 1999) (emphasis added).  Here, the 911-caller was the victim of the attempted break-in, and her identity was essentially known (or, at least, discoverable) by responding police officers, including Officer Caserta.  Thus, the 911-caller's report carried a strong indicia of reliability.  In that report, the 911-

_____

[2] Indeed, evidence at the suppression hearing demonstrated that responding officers spoke to the 911-caller at the scene, and she identified Appellant and his cohort as the men who attempted to break-in to her residence.  N.T. Suppression Hearing at 67-68, 72-73.

caller provided descriptions of two men who had just attempted to break-in to her residence. Officer Caserta heard those descriptions, arrived on-scene within 30 seconds, and observed Appellant standing with another man within feet of the 911-caller's address. The clothing worn by both Appellant and his cohort 'exactly' matched the 911-caller's description of the suspects. Additionally, the location in which Officer Caserta encountered Appellant was a high-crime area. Based on the indicia of reliability of the 911-caller's report, and the totality of the other circumstances known to Officer Caserta, we conclude that the officer had reasonable suspicion to detain Appellant for further investigation.

Moreover, we also conclude that Officer Caserta possessed a reasonable suspicion that Appellant was armed and dangerous prior to conducting the **Terry** frisk of his person. This court has stated that,

> [i]f, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons." **Commonwealth v. E.M./Hall**, 558 Pa. 16, 735 A.2d 654, 659 (1999). In order to establish reasonable suspicion, the police officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous. **See Commonwealth v. Gray**, 896 A.2d 601, 606 (Pa. Super. 2006).

**Commonwealth v. Wilson**, 927 A.2d 279, 284 (Pa. Super. 2007) (emphasis omitted).

In this case, we reiterate that Appellant was detained in a "very high-crime" area. N.T. Suppression Hearing at 15. Police responded to that area on a weekly basis for offenses including homicides, burglaries, and "strong-armed robberies." *Id.* at 16. Appellant 'exactly' matched the description of an individual who had just attempted to break-in to a residence that was located "a few feet away" from where he was standing when Officer Caserta arrived on the scene 30 seconds after hearing the radio dispatch. *Id.* at 7. When Officer Caserta detained Appellant, he became "fidgety" and kept "turning around, [and] making sudden movements[,]" despite the officer's instructions to keep his hands on the vehicle. *Id.* at 15. During a pat-down of Appellant's companion, who was suspected of having acted with Appellant in the attempted the break-in, officers discovered a gun. *Id.* at 18. Officer Caserta testified that once a firearm was recovered from that individual, she believed it was necessary, for officer safety, to conduct a pat-down of Appellant. *Id.* We conclude that under the totality of these circumstances, Officer Caserta possessed reasonable suspicion to justify the minimally intrusive, safety-oriented frisk of Appellant's person.

Accordingly, we ascertain no error in the trial court's decision to deny Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/2016