J-S68009-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SAMIR AKINES, | |
| Appellee | No. 2470 EDA 2013 |

Appeal from the Order entered July 29, 2013,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0004612-2011

BEFORE:  ALLEN, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                **FILED NOVEMBER 12, 2014**

The Commonwealth appeals from the trial court's order granting the suppression motion of Appellee, Samir Akines, ("Akines"), on the basis that the evidence at issue would have been inevitably discovered.  We agree with the Commonwealth and therefore reverse the trial court's grant of suppression.

The trial court recounted the testimony from the suppression hearing as follows:

> [] Officer Robert Wilson, a police officer for six and a half years, testified that on February 5, 2012, his tour of duty took him and his partner Officer Rivera to a unisex hair salon located at 1419 West Girard Avenue in the city and county of Philadelphia which the officer described as a high crime area. The officers went to that location after they received information over their radio for a person with a gun and a report of a shooting.  The description of the person with a gun was a black male, wearing all black clothing.  Officer Wilson testified that when they arrived at the location, there were multiple police

vehicles there and he observed the front door of the salon on the ground from being shot out, with glass broken from the entry door and there was also a plate glass broken out. The officer testified that he then walked into the salon to see if anybody was injured. There were casings inside the salon and there were about ten people inside. The officers talked to the people inside asking them what they saw and if anybody was injured. Officer Wilson testified that many of the people said that they had heard gunshots and they got down to the ground but no one saw or could give a description of the shooter.

Officer Wilson testified that initially when he entered the salon, none of the people inside matched the description they had received over their radio. However, approximately five minutes later, while the officers were getting information from the people inside, [Akines] exited the bathroom [at] the rear of the salon with his two-year-old son. He was wearing a black hoodie, black cargo pants, and black boots which matched the earlier description of a shooter. Officer Wilson testified that he approached [Akines] and asked him for his ID. [Akines] told him that he had one but it was not on him and he told him his name was Jamir White date of birth 3/10/84. Then, while Officer Wilson was trying to write the information down, he asked [Akines] to repeat his name. [Akines] said that he would give him his real name and date of birth. Officer Wilson testified that his suspicions were raised because of [Akines] matching the flash description and [Akines] lying about his actual name and date of birth. Officer Wilson frisked [Akines] for weapons for his own safety. While patting him down, he felt something hard in his right hoodie pocket. The officer testified he felt something that felt like Blistex and removed it to see what it was. What Officer Wilson recovered from [Akines'] pocket was not Blistex but a small clear plastic jar which contained a leafy substance [that appeared to be] marijuana. At that point, Officer Wilson placed [Akines] into custody and escorted him into the patrol wagon. Also recovered from [Akines] was his ID with his correct biographical information.

While [Akines] was in the patrol wagon, the two-year-old child started to cry inside the salon, so Officer Wilson's partner asked [Akines] if he had any baby bags or supplies for the child. Officer Wilson testified that his partner then came back inside the salon and told him that [Akines] said that there was a red, black, and gray supply bag in there for the baby. Officer Wilson then began looking for the bag and found it at the bottom of the

steps in the basement of the salon. Officer Wilson testified that it looked like a small book bag which was zipped shut and it had a strong smell of fresh marijuana coming from it. The officers opened the bag and found twenty small clear plastic jars of a green leafy substance that had the same consistency, size, and shape, as the jar that was recovered from [Akines]. After the officer removed the jars of marijuana, he immediately saw a black handgun in the bag. It was a Glock 27, .40 caliber serial number VYG-412 which was placed on a property receipt.

Trial Court Opinion, 2/20/14, at 2-4 (citations to notes of testimony omitted).

The Commonwealth charged Akines with carrying a firearm without a license, carrying a firearm on the public streets of Philadelphia, and possession of marijuana.[1] On April 10, 2013, Akines filed a suppression motion. The trial court convened suppression hearings on April 10, 2013, June 20, 2013, and July 29, 2013, ultimately granting Akines' suppression motion on July 29, 2013. This timely appeal followed.[2] Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

The Commonwealth presents a single issue for our review:

Did the [trial] court err in suppressing [Akines'] handgun and drugs based on a police officer's exceeding the scope of a protective frisk where, in the absence of the violation, the evidence still would have been discovered?

Commonwealth Brief at 3.

_____

[1] 18 Pa.C.S.A. §§ 6106, 6108, and 35 P.S. 780-113(a), respectively.

[2] The Commonwealth certified in its notice of appeal that the trial court's order would "terminate or substantially handicap the prosecution." **See** Pa.R.A.P. 311(d).

Our standard of review when the Commonwealth appeals from a suppression order is as follows:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Baker*, 946 A.2d 691, 693 (Pa. Super. 2008) *quoting* *Commonwealth v. Barber*, 889 A.2d 587, 592 (Pa. Super. 2005). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted). However, the suppression court's conclusions of law, which are not binding on an appellate court, are subject to plenary review. *Commonwealth v. Johnson*, 969 A.2d 565, 567 (Pa. Super. 2009) (citations omitted).

Here, the trial court granted Akines' suppression motion on the basis that Officer Wilson exceeded the scope of a protective frisk when, during the pat down of Appellant, he "escalated the frisk of [Appellant] into a search." Trial Court Opinion, 2/20/14, at 6. The trial court concluded that the

warrantless search of the interior of Akines' pocket was impermissible under the "plain feel" doctrine and was unsupported by probable cause.[3] In reaching its determination, the trial court relied on the testimony of Officer Wilson, who testified about his interaction with Akines as follows:

| Officer Wilson: | While we were getting information from people that were inside the salon, [Akines] exited the bathroom with I believe a two year-old little boy. I believe it was his son. |
|---|---|

*** 

He had ... a black hoodie, black cargo pants, and I believe it was black boots.

*** 

_____

Under the plain feel doctrine, a police officer may seize non-threatening contraband detected through the officer's sense of touch during a Terry frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object. [T]he plain feel doctrine is only applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent. Immediately apparent means that the officer readily perceives, without further exploration or searching, that what he is feeling is contraband. If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately apparent requirement has not been met and the plain feel doctrine cannot justify the seizure of the object.

*Commonwealth v. Pakacki* , 901 A.2d 983, 989 (2006) (internal citations and quotation marks omitted).

I approached [Akines] and asked him ... if he had state ID.

\*\*\*

[H]e gave me a name of ... Jamir White ... date of birth 3/10/84.

\*\*\*

I asked him to repeat it. He told me he was going to give me his real name and date of birth.

\*\*\*

It rose my suspicion about him being that he met the flash and being that he lied to me about his actual name and date of birth. Then I frisked him for weapons or any type of weapons on him and I recovered from his pocket a small clear jar, plastic jar containing a green leafy substance, alleged marijuana. ...

Assistant District Attorney: This jar that you recovered when you recover it do you just go right into his pants and pull out a jar?

Officer Wilson: No. I just did a quick pat down of him to make sure there was no wepaons on him. Then I asked him what was that in his pocket. It was in his right hoodie pocket.

\*\*\*

Assistant District Attorney: What does he say?

Officer Wilson: He was just looking like, he didn't say anything, just looked down so I removed it.

\*\*\*

Assistant District Attorney:   When you first touch it and you feel that pocket what do you think it is?

Officer Wilson:   It could have been Blistex. I removed it to make sure what it was.

*** 

I [then] placed [Akines] in custody and I escorted him to our patrol wagon.

*** 

The child that he had was beginning to cry. So we asked him for any type of contact information for the mother of the child and if there was any baby bags that he had ... any supplies for the baby. He said that he did.

*** 

[H]e said that there was a supply bag in there. He gave me a color of the bag. He said that it was a red, black, and gray supply bag.

*** 

I looked for the bag.[4]

*** 

It was at the bottom of the basement steps.

*** 

---

[4] Officer Wilson testified that Akines did not tell him precisely where the bag was located, and that he independently searched for it, eventually locating it in the basement, the entrance to which was approximately ten feet from the front door. N.T., 4/10/13, at 18-19, 34.

> We opened the bag. There were 20 small plastic clear plastic jars of a green leafy substance [and] a black handgun.

N.T., 4/10/13, at 14-18.

After reviewing Officer Wilson's testimony, the trial court concluded that Officer Wilson exceeded the scope of a protective *Terry* frisk when he conducted a pat down of Akines and reached into his pocket to extract the vial of what the officer determined was marijuana. The trial court explained:

> Officer Wilson had reasonable suspicion to frisk [Akines] where he was investigating a report of a shooting. When Officer Wilson arrived on the scene, he saw that the entire salon had been blown out with the glass shattered from the front door and casings inside the salon. The officer had reasonable suspicion to frisk [Akines,] who was inside the salon and matched the description he received over the radio for a person with a gun and a report of a shooting when [Akines] came out of the bathroom.
>
> However, Officer Wilson's seizure of the marijuana from [Appellant] went beyond the scope of the frisk. Under the plain feel exception, "a police officer may seize non-threatening contraband detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object." *Commonwealth v. Stevenson*, 744 A.2d 1261, 1265 (Pa. 2000). Here, the object, a small clear plastic jar containing the marijuana, seized from [Akines] did not immediately have an incriminating nature of contraband [since] Officer Wilson specifically testified that while patting [Akines] down he felt something hard in his right hoodie pocket which felt like a Blistex container and he had to remove it to see what it was. This does not justify the officer escalating the frisk of [Akines] into a search. ... Because Officer Wilson did not testify to a belief that what he felt was contraband, this case does not fit within the paradigm of the plain feel exception.

Trial Court Opinion, 2/19/14, at 5-6.

The Commonwealth does not contest the trial court's determination that Officer Wilson exceeded the scope of a protective frisk when he extracted the vial of marijuana from Akines' pocket. Commonwealth Brief at 13. Rather, the Commonwealth's argument is that the trial court's grant of suppression was erroneous because the police officers would have inevitably discovered the contraband on the basement steps, notwithstanding the improper frisk. Commonwealth's Brief at 10-29. The trial court, however, concluded that the Commonwealth failed to demonstrate that the contraband found in the basement of the salon would have been inevitably discovered. The trial court explained:

> The Commonwealth presented no evidence that the bag would have been found and [that it would have been] linked to [Akines] without the illegal police conduct. The Commonwealth presented no evidence as to the specifics of where and how the basement could be accessed [or whether it] was separately secured[.] [The Commonwealth] presented no evidence that police ever executed a Search Warrant in the basement or in the salon. ... The marijuana and gun found in the bag would not have been recovered if not for [Akines'] statement made as a result of his illegal arrest.

Trial Court Opinion, 2/20/14, at 6-7.

Upon careful review, we agree with the trial court's determination that Officer Wilson's search into Akines' pocket exceeded the scope of a **Terry** frisk. However, we are persuaded by the Commonwealth that it demonstrated by a preponderance of the evidence that the police officers

- 9 -

would have inevitably discovered the gun and marijuana in the course of their investigation.

The inevitable discovery doctrine provides "[i]f the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct." **Commonwealth v. Bailey**, 986 A.2d 860, 862 (Pa. Super. 2009) (citations omitted). "Suppressing evidence in such cases, where it ultimately or inevitably would have lawfully been recovered, 'would reject logic, experience, and common sense.'" **Commonwealth v. Gonzalez**, 979 A.2d 879, 890 (Pa. Super. 2009) *quoting* **Nix v. Williams**, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); **Commonwealth v. Brown**, 368 A.2d 626, 631 (Pa. 1977) (citations omitted) ("evidence secured through the illegality should nevertheless have been admitted where it was obvious that without the illegality the Commonwealth would have obtained the information").

"The 'preponderance of the evidence' is the lowest burden of proof in the administration of justice, and it is defined as the 'greater weight of the evidence, i.e., to tip a scale slightly [in one's favor]'"). **Commonwealth v. A.R.**, 990 A.2d 1, 4, n.5 (Pa. Super. 2010); *see also Carey v. Pennsylvania Dept. of Corrections*, 61 A.3d 367, 374 (Pa. Cmwlth. 2013)

("A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to 'a more likely than not' inquiry."). Here, our review of the record reveals the Commonwealth demonstrated by a preponderance of the evidence that the contraband would have been inevitably discovered. *Johnson*, 969 A.2d at 567 (Pa. Super. 2009) (citations omitted) (the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts; such conclusions of law are subject to plenary review).

The record reveals that Officer Wilson and his partner Officer Rivera received a radio report of a shooting at a hair salon, and a description of the shooter as a black male wearing all black clothing. N.T., 4/10/13, at 8. When the officers arrived at the hair salon, they immediately confirmed that it had been the scene of a shooting, observing that the glass on the front door was shot out, and the front door itself was lying on the ground. N.T., 4/10/13, at 9. The officers additionally saw numerous bullet casings on the ground both inside and outside of the hair salon. *Id*. The police officers observed approximately ten people inside the hair salon, none of whom matched the description of the shooter. *Id*. at 13. The officers immediately took steps to "contain the crime scene", instructing the occupants of the hair salon not to disturb any of the debris from the shooting. *Id*. at 11. The officers then systematically asked for identification from all of the occupants

of the salon. Officer Wilson testified, "we asked them for their ID's ... since they had to get interviewed by the detectives." *Id*. at 10. Approximately five minutes after the police officers' arrival, Akines emerged from the bathroom with a two-year-old child. *Id*. at 12-13. Officer Wilson immediately recognized that Akines matched the description of the shooter. *Id*. at 12. The officer asked Akines for his identification; Akines initially provided a false name, but then admitted that he had given a false name, and provided his real name to the officer, which further aroused the officer's suspicions.

Under the totality of the circumstances, we conclude that the Commonwealth demonstrated by a preponderance of the evidence that the officers would have recovered the contraband from the basement steps. Specifically, Officer Wilson testified that he and Officer Rivera made efforts to secure and contain the crime scene by preventing the occupants of the hair salon from disturbing the debris, indicating the officers' intent to conduct a further inspection of the premises for evidence. Moreover, Officer Wilson stated that he collected identification from all of the occupants of the hair salon for the express purpose of preparing for a subsequent investigation, indicating that further police inquiry and investigation into the shooting would occur. Contrary to the trial court's determination that "[t]he Commonwealth presented no evidence as to the specifics of where and how the basement could be accessed", Officer Wilson testified that the entrance

to the basement was merely ten feet from the front door of the hair salon, and the record indicates that the officer was able to gain unimpeded entry into the basement where the book bag containing the contraband was discovered. Trial Court Opinion, 2/20/14, at 7; N.T., 4/10/13, at 19.

Given that the police officers were preparing to conduct an investigation of the premises, that the basement door was in close proximity to the entrance of the building that had sustained significant gunshot damage, and that nothing in the record indicates that access to basement was obstructed in any way, it is reasonable to conclude that the impending police investigation "more likely than not" would have encompassed the basement stairwell. *See id*. at 19.

Additionally, Officer Wilson testified that when he entered the basement, he observed mainly boxes, and he saw at the bottom of the steps a "small book bag" or "little kids backpack." *Id*. at 19-20. Officer Wilson testified that there were no other book bags in the basement area, and because the basement mainly contained boxes, the book bag would have been conspicuous. *Id*. at 20. Furthermore, the officer testified that as he neared the book bag, he smelled a "strong" odor of "fresh" marijuana emanating from it, increasing the likelihood that the officers would have found the contraband in the bag because it smelled of marijuana. *Id*.; **see Commonwealth v. Stoner**, 710 A.2d 55, 59 (Pa. Super. 1998) (explaining that "plain smell" is a concept that is analogized to "plain view" to establish

probable cause); ***Commonwealth v. Stoner***, 344 A.2d 633, 635 (Pa. Super. 1975) ("[I]t would have been a dereliction of duty for [the arresting officer] to ignore the obvious aroma of an illegal drug which he was trained to identify."). Upon opening the book bag, Officer Wilson recovered twenty vials of marijuana, a handgun, and "multiple prescribed medication bottles [that] had [Akines'] name on the[m]", thus connecting the contraband to Akines, contrary to the trial court's determination that the Commonwealth presented no evidence that the bag could have been "linked" to Akines. N.T., 4/10/13, at 22; Trial Court Opinion, 2/20/14, at 6-7. Further, it is reasonable to conclude that upon discovering the contraband in the book bag, the police officers would have placed Akines under arrest, and the contraband in Akines' pocket would have been recovered from a search incident to arrest. ***See Commonwealth v. Walker***, 501 A.2d 1143, 1148 (Pa. Super. 1985) ("Incident to a lawful arrest, a police officer may conduct a warrantless search of the arrestee's person and of the area within the immediate control of the arrestee[;] [t]he warrantless search acts to protect the arresting officer from weapons the arrestee may have access to, and prevents the destruction or concealment of evidence.").

Given the foregoing, we conclude that the Commonwealth demonstrated by a preponderance of the evidence that the police officers would have conducted an investigation of the crime scene that would have

led to the inevitable discovery of the contraband. We therefore reverse the trial court's order granting Akines' suppression motion.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/12/2014