J-S10043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JORDYN M. KENNEY :
:
Appellant : No. 920 MDA 2024

Appeal from the Judgment of Sentence Entered May 31, 2024
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000863-2023

BEFORE: BOWES, J., OLSON, J., and SULLIVAN, J.

DISSENTING MEMORANDUM BY SULLIVAN, J.: **FILED MARCH 25, 2026**

Because I would hold that the trial court erred as a matter of law in denying the suppression motion filed by Jordyn M. Kenney ("Kenney"), which was predicated on an officer's unlawful search that exceeded the scope of Kenney's consent to a "pat down" search, I would vacate the judgment of sentence, and remand for the trial court to enter an order granting suppression and for further proceedings.

The suppression record reflects that the issue before the trial court was the scope of a "pat down" search. N.T., 10/4/23, at 5. Sergeant David Troxell ("Sergeant Troxell") testified he specifically requested consent to "pat down [Kenney] for drugs or weapons", a fact that is uncontested. N.T., 10/4/23, at 11, 15. The Commonwealth, Seargent Troxell, and defense counsel consistently referred to the search of Kenney as a "pat down" or "***Terry***

search" and used the terms interchangeably. *Id*. at 11-15. A "pat down" is a legal term of art that has developed since the United States Supreme Court ("SCOTUS") opinion in *Terry v. Ohio*, 392 U.S. 1 (1968) and denotes a "limited Search of an individual's **outer clothing** . . ." *Commonwealth v. Guillespie*, 745 A.2d 654, 657 (Pa. Super. 2000) (emphasis added); *accord Commonwealth v. Sharaif,* 205 A.3d 1286, 1290 n.6 (PA. Super. 2019); *see also Commonwealth v. Cavalieri*, 485 A.2d 790, 793 (Pa. Super. 1984) (noting that in *Terry,* the scope of the permissible "pat down" was such that the officer did not place his hands in the [suspects'] pockets or under the outer surface of their garments until he had felt weapons) (internal citation and quotation omitted).

The scope of a "pat down", whether consensual or not, is linked with the limited purpose of this category of warrantless search. The purpose of a "pat down" or "*Terry* search" is:

> to assure the safety of the officer and of bystanders. Under both state and federal constitutions, an officer performing a stop and frisk may pat down the suspect to identify **weapons** and may remove any **weapons** that he can identify by feel. If the search proceeds beyond this scope and extends to a general search for incriminating evidence, it is no longer valid and the fruits of the search will be suppressed.

*Commonwealth v. Stoner*, 710 A.2d 55, 58 (Pa. Super. 1998) (citations omitted). In order for this narrow exception to apply, the officer must be

- 2 -

conducting 1) a valid investigatory stop,[1] and 2) during the valid stop the officer must observe unusual and suspicious conduct on the part of the of the individual which leads him to reasonably believe that the suspect may be armed and dangerous. *See Commonwealth v. E.M./Hall,* 735 A.2d 654, 659 (Pa. 1999); *see also Commonwealth v. Fulton*, 345 A.3d 352, 368 (Pa. Super. 2025). An officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous, and the suppression court examines the facts under a totality of the circumstances. *Fulton*, 345 A.3d at 368. Under state and federal law a *Terry* "pat down" is limited to the suspect's outer garments and for the purpose of identifying weapons by feel. *E.M./Hall*, 735 A.2d at 659; *Stoner*, 710 A.2d at 58. Additionally, it "must always be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *E.M./Hall*, 735 A.2d at 659. It is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence, and if the "pat down" "extends to a general search for incriminating evidence, it is no longer valid." *Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa. Super. 2011).

The limited exception to this rule is "the plain feel doctrine", which our Supreme Court has made clear is an extremely narrow doctrine and is "only

---

[1] Whether this was an investigatory stop, and, if so, whether permissible under *Terry,* was not argued at suppression; therefore, we do not address this issue.

applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent." *Interest of T.W.,* 261 A.3d 409, 420- 422 (Pa. 2021). In sum: a "pat down", pursuant to *Terry*, permits a frisk of a suspect's outer clothing for weapons; the plain feel doctrine allows for a further search if the officer feels something immediately recognizable as illegal contraband. Our Supreme Court held that the "immediately apparent requirement of the plain feel doctrine is not met when an officer," during a "pat down" search—in that case, a *Terry* frisk— merely "feels and recognizes by touch an object that could be used to hold either legal or illegal substances, even when the officer has previously seen others use that object to carry or ingest drugs." *Commonwealth v. Stevenson*, 744 A.2d at 1266. *See id*.; *see also Commonwealth v. Fink*, 700 A.2d 447, 451 (Pa. Super. 1997) (officer was authorized to perform a "pat down" of a suspect but exceeded the scope of consent to the "pat down" by seizing a marijuana pipe and other paraphernalia from the suspect's pockets when those objects were not "immediately apparent" to the officer they were contraband); *Mesa*, 683 A.2d at 647-48 (concluding an officer was permitted to perform a "pat down" search for weapons, but exceeded his authority when he felt a bulge that he believed could be contraband, pulled it out, and discovered folded money and a packet of marijuana); *accord Interest of T.W.*, 261 A.3d at 421-22 (setting forth the plain feel doctrine); *Commonwealth v. Breeland*, 279 A.3d 1251, 2022 WL 1515481 (Pa. Super.

May 13, 2022) (unpublished mem. at *6) (holding the plain feel doctrine did not apply where "further investigation was needed for [the officer] to identify the criminal nature of the substance").

Here, the record is uncontested that Sergeant Troxell asked for consent to conduct a "pat down for drugs and weapons." N.T. 10/4/23 at 15. Our Supreme Court has articulated the limits of consent in *Commonwealth v. Valdivia*, 195 A.3d 855, 861 (Pa. 2018), while the Fourth Amendment and Article I, Section 8 require a warrant supported by probable cause for a search, one of the exceptions to the warrant requirement is consent; however, "there are carefully demarked limitations as to what constitutes a valid consent search." *Id*. The Commonwealth bears the burden of establishing voluntary consent. *See Commonwealth v. Venable*, 200 A.3d 490, 497 (Pa. Super. 2018).

> Regarding the scope of consent:
>
> If consent is given voluntarily, the ensuing search must be conducted within the scope of that consent. The standard for measuring the scope of an individual's consent is one of objective reasonableness. We do not ascertain the scope of consent from the individual's subjective belief or the officer's understanding based on his or her training and experience, but based on what the typical reasonable person would have understood by the exchange between the officer and the suspect.

*Valdivia*, 195 A.3d at 862 (internal citations, quotations, and ellipses omitted). The scope of consent "is limited by the terms of its authorization," and, accordingly, "[t]o be justified by consent, the scope of the search actually made should be no broader than the scope of consent given." *Id*. at 865

(internal citations and quotations omitted). Our Supreme Court has held that the "burden is on law enforcement officials to conduct a search within th[e] parameters" of the consent given. *Id*. at 868. Since a *Terry* "pat down" is limited in its application; likewise, consent for this specific type of search is limited by the extent of its authorization. Furthermore, the scope of a search is controlled by the scope of consent given, and when law enforcement exceed the scope of the individual's consent, the search is illegal "regardless of whether the individual objected or revoked his or her consent." *Comonwealth v. Fulton*, 345 A.3d at 363. Additionally, the law is well established that a "pat down" is limited to the outer clothing to discover weapons that may endanger an officer's safety, or if while conducting that limited search on the outside of a suspect's clothes possession of illegal contraband is "immediately apparent." *Interest of T.W.*, 262 A.3d at 422.

In its opinion, the trial court, without analysis of the term "pat down," or discussion of its context in the law, summarily concluded that a *Terry* analysis was not necessary because "[Kenney] gave [Sergeant] Troxell consent to pat him down." Trial Ct. Op., 11/15/23, at 3-4. While it is unclear exactly why, it seems the trial court reasoned that if an officer requests a "pat down" for drugs *and* weapons it either takes the analysis outside the scope of *Terry* and expands it to a general search, or it creates an expanded

sub-category of **Terry**.[2]  I have been unable to pinpoint any law that supports this expansive analysis.   Rather, since the invasive search here clearly exceeded the scope of Kenney's consent to the "pat down" requested, in derogation of the Fourth Amendment and Article I, Section 8, as explained further **infra**, I cannot agree with the court's unsupported legal analysis or legal expansion of a "pat down."

The facts here show the trial court expanded Kenney's consent from a "pat-down" search to general consent to search the rest of his person for contraband.  Here, Kenney was a pedestrian when Sergeant Troxell observed his strange behavior.  Sergeant Troxell testified that he suspected Kenney was intoxicated.   Suspecting intoxication, Sergeant Troxell conducted a field sobriety test, which was negative.  Sergeant Troxell then suspected Kenney was under the influence of an unspecified controlled substance, and there was no testimony that the officer smelled marijuana, or specifically suspected marijuana use.

An obvious omission in Sergeant Troxell's testimony was any fear for his safety because he believed Kenney was armed and dangerous; in fact, he clearly testified that the only safety concern he had was that Kenney might

---

[2] The Commonwealth likewise argues that Kenney expressly consented to a "pat down" search, and impliedly consented to the search inside of his water bottle and pockets by not telling Sergeant Troxell to stop the search or otherwise expressly revoking his consent as the search continued. **See** Commonwealth's Br. at 6, 14.

get hit by a car. *See* N.T., 10/4/23, at 9. Despite having no fear for his safety, Sergeant Troxell asked for consent to "pat him down for weapons or drugs" and Kenney consented. *Id*. at 11, 15. Crucially, the testimony thereafter does not indicate an actual "pat down" even occurred; rather, Sergeant Troxell testified to first physically grabbing a water bottle Kenney was holding and opening it to determine if there was alcohol in it, and then proceeding straight into his jacket pockets and pulling out a charger, a phone, and then a package of cigarillos. *See id*. at 12, 15. Critically, Sergeant Troxell testified he was not able to tell immediately that illegal contraband was in Kenney's pockets prior to reaching into his inner pocket, pulling items out, and then searching within them. *See id*. at 14. The record clearly shows that a *Terry* "pat down" became a search for incriminating evidence beyond the consent given.

Without legal support for an expansion of *Terry* "pat downs" or new sub-categories expanding the limits of consent, I am constrained to conclude the trial court committed legal error. The record reveals that Kenney consented to a "***pat down***" search, not a search of the contents of his pockets. When Sergeant Troxell did not feel a weapon or any items that were immediately recognizable as illegal contraband, the scope of a legal "pat down" was complete. Sergeant Troxell expressly testified that he asked for consent to perform a "pat down" on Kenney, not to pull items from inside his pockets. *See* N.T., 10/4/23, at 15. Additionally, Sergeant Troxell did not

- 8 -

testify that he suspected Kenney to be under the influence of marijuana, and, therefore, the fact that the cigarillo packages often contain marijuana is of no moment. Rather, having asked for consent to perform a "pat down" of Kenney, and receiving consent, Sergeant Troxell performed the "pat down" search, and then **without discerning any immediately apparent contraband and without asking for consent to expand the scope of the search inside Kenney's pockets**, he then proceeded to pull several items from inside Kenney's pockets.

The Majority's decision affirming the denial of suppression principally relies on **Commonwealth v. Yedinak**, 676 A.2d 1217 (Pa. Super. 1996), in which this Court affirmed a denial of suppression of the fruits of a **vehicle** search pursuant to a "general consent" to search the vehicle for drugs. However, **Yedinak** is distinguishable not only because that case concerned a vehicular search but because, crucially, the officer asked for consent to search the entire vehicle for drugs to which the defendant gave "general consent," whereas, here, the officer specifically asked for consent to conduct a "**pat down"**, a term denoting a limited search of a suspect's **outer clothing**, **see**, **e.g.**, **Guillespie**, 745 A.2d at 657, and then after the officer conducted a "pat down" and without any further consent or it being immediately apparent that Kenney possessed a weapon or contraband began searching inside Kenney's pockets and pulling out several items that were not apparently contraband and then searching within those items, namely a packet of cigarillos. As the

officer exceeded the scope of Kenney's consent to conduct a "pat down" by performing a more invasive search than consent to "pat down" his person for drugs or weapons, **Yedinak** does not support affirmance.[3]

Based on the foregoing, I would hold that the trial court's factual finding, *i.e.*, that Kenney consented to a general search of his person, lacks support in the record, and its legal conclusions (*i.e.*, that Kenny's consent to a "pat down" search included a search of one's pocketed personal effects, since he did not "terminate[] his consent" after Sergeant Troxell began going into his effects, **see** Trial Ct. Op., 11/15/23, at 5 n.1) constitute error.

Therefore, I respectfully dissent.

---

[3] The Majority cites this Court's decision in **Commonwealth v. Sullivan**, 293 A.3d 588 (Pa. Super. 2023) (non-precedential decision) in context of distinguishing **Yedinak** and illustrating what an impermissible search exceeding the scope of consent would look like. However, **Sullivan** is just as inapposite as **Yedinak** because **Sullivan** involved general consent to search a vehicle—there, consent to search the vehicle, but not inside containers therein—and not a "pat down" of a pedestrian.