J-A08025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWARD LONG | |
| Appellant | No. 3255 EDA 2015 |

Appeal from the Judgment of Sentence September 29, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000845-2014

BEFORE: PANELLA, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 06, 2017**

Edward Long appeals his judgment of sentence, imposed in the Court of Common Pleas of Philadelphia County, after he was convicted in a nonjury trial of receipt of stolen property ("RSP")[1] and unauthorized use of an automobile.[2] Upon careful review, we affirm.

The trial court set forth the facts of this case as follows:

> On October 6, 2013, at 5:00 a.m., Officer [Jason] Branyan's tour of duty took him to 4000 Paul Street in the City of Philadelphia. Officer Branyan described the area as a "dead end" road. Officer Branyan had previously been notified during roll-call that there had been numerous complaints about the theft of Ford F-150s and Ford F-250s in this vicinity. Specifically, he was told that

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3925(a).

[2] 18 Pa.C.S.A. § 3928(a).

Walsh Construction had been the target of thefts of vehicles and construction[-]related objects.

At 4000 Paul Street, Officer Branyan saw the Appellant, Edward Long, walk away from a black Dodge Ram that was parked along the sidewalk and had its interior lights illuminated. [Long], the only person in the area, then walked across the street towards a white Ford F-250 pick-up truck that belonged to Walsh Construction. Officer Branyan noted that the Ford F-250 had its engine running. When [Long] saw the patrol car he stopped and abruptly walked back across the street away from the Ford F-250. Officer Branyan and his partner, Officer [Michael] Schaeffer, exited the patrol car and made contact with [Long]. Officer Schaeffer asked [Long] if he had any weapons on him and [Long] responded that he had a knife. Fearing for his safety, Officer Schaeffer removed the knife from [Long's] pocket[]. In the process of removing the knife, Officer Schaeffer also removed a Walsh Construction gas card from [Long's] pocket. As Officer Schaeffer conducted this frisk, Officer Branyan smelled alcohol on [Long's] breath. Officer Branyan ran the plates of the Ford F-250, and learned that it had been reported stolen by Walsh Construction. He also noted that there was an open beer can inside of the Ford F-250.

Believing that [Long] had stolen the Ford F-250, the [officers] placed him under arrest. After [Long] was placed into custody, Sergeant [George] Ackerman arrived on the scene for the purpose of processing a stolen vehicle for latent fingerprints. He failed to recover identifiable fingerprints on either the car or the beer can.

Trial Court Opinion, 3/9/16, at 1-2 (citations to record omitted).

Prior to trial, Long moved to suppress all physical evidence recovered as a result of his allegedly unlawful detention and search. Long also argued a motion to dismiss pursuant to Pa.R.Crim.P. 600. The court denied both motions, and Long proceeded to a nonjury trial before the Honorable Paul P. Panepinto, after which he was convicted of the above offenses. Sentencing was deferred until April 14, 2015, at which time the court sentenced Long to

two to four years' incarceration followed by three years of probation. The court gave Long credit for six months of time served prior to trial.[3]

Long filed a motion to modify sentence on April 24, 2015, which the court granted. After a second sentencing hearing, the court resentenced Long to two to four years' incarceration, followed by three years of probation. This time, the court granted Long credit for all time served, approximately two years.

This timely appeal follows, in which Long raises the following issues for our review:

> 1. Did not the [trial] court err in denying [Long's] motion to dismiss under Pa.R.Crim.P. 600 where the Commonwealth presented insufficient evidence to establish due diligence?
>
> 2. Did not the [trial] court err in denying [Long's] motion to suppress physical evidence where [Long] was subjected to detention, frisk, and search without adequate suspicion of criminal activity or facts leading the police to believe that [Long] was armed and dangerous?
>
> 3. Was not the evidence insufficient as a matter of law to sustain a conviction of [RSP] and unauthorized use of an automobile, where [Long] was never seen within thirty feet of the vehicle and, in any event, the vehicle was not damaged and was being operated with keys?
>
> 4. Was not the verdict so contrary to the weight of the evidence as to shock one's sense of justice, therefore requiring a new trial, where the gas card in [Long's] pocket and the circumstantial evidence that he also entered another vehicle on the block suggests theft from a motor vehicle, rather than possession and operation of that vehicle?

---

[3] At the time of sentencing, Long had been incarcerated since October 7, 2013.

5.  Did not the [trial] court violate due process and impose an unreasonable sentence of two-to-four years, followed by three years of probation, by relying upon improper factors, treating mitigators as aggravators, and failing to consider [Long's] rehabilitative needs?

Brief of Appellant, at 5-6.

Long first alleges that the trial court erred in denying his Rule 600 motion.  Long asserts that the Commonwealth failed to establish that it exercised due diligence in bringing him to trial.  Specifically, the Commonwealth requested four continuances because its police witness, Officer Branyan, was unable to attend due to illness.  Long argues that the evidence presented by the Commonwealth did not sufficiently establish that Officer Branyan's unspecified medical condition "rendered him unavailable for court."  Brief of Appellant, at 30.  Accordingly, Long claims that his charges should have been dismissed.

We begin by noting our scope and standard of review.

In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration.  An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court.  An appellate court must view the facts in the light most favorable to the prevailing party.

- 4 -

***Commonwealth v. Thompson***, 93 A.3d 478, 486 (Pa. Super. 2014) (citation, brackets and ellipses omitted).

Pennsylvania Rule of Criminal Procedure 600, known as the "speedy trial" rule, requires that a defendant be brought to trial within 365 days of the date on which the criminal complaint is filed. Pa.R.Crim.P. 600(A)(2)(a). In computing time under Rule 600, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). In reviewing a claim under Rule 600,

> this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

***Thompson***, 93 A.3d at 486–87 (citation, brackets and ellipses omitted).

Here, Long argues that the Commonwealth "failed to make any showing beyond a bare assertion" that Officer Branyan's medical issues prevented him from coming to court. Brief of Appellant, at 28. Long asserts that, at the Rule 600 motion hearing, Officer Branyan testified only to having a "medical condition" that he would classify as "serious." *Id.* at 30, quoting N.T. Motion Hearing, 1/8/15, at 27, 29. Long claims that the Commonwealth should have offered testimony either from Officer Branyan's physician or that he was under doctor's orders not to attend court. Long also alleges that, because Officer Branyan knew his treatment schedule six months in advance, the Commonwealth should have taken that schedule into account when scheduling his court appearances. This argument is waived.

At the hearing on Long's Rule 600 motion, Long's counsel specifically conceded that Officer Branyan's treatments were beyond the control of the Commonwealth. Specifically, counsel stated as follows during her argument:

> MS. KNOX: . . . In that event, Your Honor, it's obviously nothing if those are his treatment date[s]. Those are his treatment dates. . . . And I certainly wouldn't argue that an illness is beyond – is within the Commonwealth's control.

N.T. Rule 600 Motion Hearing, 1/8/15, at 35.

Rather than attack, as he does on appeal, the alleged lack of evidence supporting the Commonwealth's claim that Officer Branyan's illness prevented him from attending court, Long argued before the trial court that the Commonwealth should have instead presented the testimony of Officer

Branyan's partner on the night in question, Officer Schaeffer. Long's argument in the trial court was framed as follows:

> [MS. KNOX]: However, Your Honor, I question why they didn't reach out to Officer Schaeffer which, in my opinion, would have been a diligent thing to do. And I would draw Your Honor's attention to the language in **Commonwealth v. Stallone**. I do have a copy for Your Honor. And that's 87 A.3d 352. That says that the Commonwealth must do everything reasonable within its power to guarantee that trial begins on time.
>
> And I certainly wouldn't argue that an illness is beyond – is within the Commonwealth's control. However, this other officer who was right there and saw everything, in my opinion, Your Honor, that's absolutely within the Commonwealth's control. And I submit to Your Honor that they could have and should have brought this case within the 365 days and they haven't.

*Id.* at 35-36.

It is well-settled that arguments not made before the trial court may not be presented for the first time on appeal. *See Commonwealth v. Little*, 903 A.2d 1269, 1272 (Pa. Super. 2006) (claim of statute's unconstitutionality must be raised and preserved at trial and cannot be raised for first time on appeal); *see also Commonwealth v. Malloy*, 856 A.2d 767, 778 (Pa. 2004) (claim of Fifth Amendment violation waived because such claim was not "particular" theory advanced at suppression hearing); *Commonwealth v. Doyen*, 848 A.2d 1007, 1011 (Pa. Super. 2004) (although appellant challenged admission of wiretap evidence in pre-trial suppression motion, failure to raise specific challenge to authenticity of particular judge's signature precluded him from raising such challenge for first time on appeal); *Commonwealth v. Gordon*, 528 A.2d 631, 638 (Pa.

Super. 1987) (theory of error different from that presented to trial court waived on appeal, even if both theories support same basic allegation of error giving rise to claim for relief).  Accordingly, because Long did not raise in the trial court the theory of relief he now argues on appeal, his claim is waived for purposes of our review.

Long next claims that the trial court erred in denying his motion to suppress evidence obtained by police during their stop of Long because the detention was not supported by reasonable suspicion.  As a result, Long claims that all evidence seized, and all observations made, as a result of his detention must be suppressed.  In the alternative, Long asserts that the court should have at least suppressed the gas card seized from his pocket because:  (1) the police lacked sufficient cause to believe he was armed and dangerous and/or (2) the seizure of the gas card exceeded the limits of a *Terry*[4] frisk.  Long is entitled to no relief.

This Court's well-settled standard of review of a denial of a motion to suppress evidence is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record,

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526–27 (Pa. Super. 2015) (citation, brackets and ellipses omitted).

Under Pennsylvania law, there are three levels of encounter that aid courts in conducting search and seizure analyses.

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Carter*, 105 A.3d 765, 768 (Pa. Super. 2014), quoting *Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa. Super. 2013).

Here, the trial court concluded that Long was subject to an investigative detention that was supported by reasonable suspicion. We agree. At the suppression hearing, Officer Branyan testified that, a few days prior to the incident, he had been advised during roll call that there had been complaints about thefts in the area. He also testified that he had received an alert from the Major Crimes Unit that thefts of Ford F-250s were up. Officer Branyan was also aware that Walsh Construction Company, which was engaged in construction on nearby I-95, had been the recent

victim of vehicle thefts. While on patrol at 5:00 a.m. on the 4000 block of Paul Street, he noticed Long, alone, on a dead-end street, walking away from a black Dodge Ram with its interior lights on, towards a white Ford F-250, which was blocking a driveway and had its engine running. Officer Branyan knew that a car dealership located on the corner of Paul Street and Torresdale Avenue parked its for-sale vehicles on the sidewalk of that block of Paul Street. As soon as Long spotted Officer Branyan's vehicle, he immediately turned around and walked back towards the black Dodge Ram.

Although "[t]he analysis of the totality of the circumstances surrounding an investigatory stop when the police officer observes citizens engaged in suspicious activity on public thoroughfares is a difficult one," *In Interest of B.C.*, 683 A.2d 919, 923–24 (Pa. Super. 1996), the Pennsylvania Supreme Court has enumerated some of the factors which should be considered: "All of the detailed facts and circumstances must be considered. The time is important; the street location is important; . . . the movement and manners of the parties are important." *Commonwealth v. Lawson*, 309 A.2d 391, 394 (Pa. 1973). Moreover, "[w]hen evaluating the totality of circumstances comprising reasonable suspicion or probable cause, this [C]ourt will not ignore the ability of experienced police officers to draw deductions and inferences which other persons might not make." *In Interest of B.C.*, 683 A.2d at 924. Finally, "the time and place of an encounter may indicate that a person, conspicuous through their solitary presence at a late hour or desolate location, may be the object of a search."

- 10 -

*Commonwealth v. Jackson*, 519 A.2d 427, 431 (Pa. Super. 1986), citing *Commonwealth v. Cortez*, 491 A.2d 111 (Pa. 1985).

In light of the foregoing, and under the totality of the circumstances detailed above, we conclude that the police possessed reasonable suspicion to stop Long and investigate him. Long was alone in the early hours of the morning, on a dead-end street, in an area where thefts had recently been on the rise. Long was walking between two vehicles. One of those vehicles belonged to a company that Officer Branyan knew had experienced recent vehicle thefts. The other vehicle's lights were on, even though Officer Branyan knew that it was for sale and that "no one should have been in it." N.T. Suppression Hearing, 1/8/15, at 48. Finally, upon seeing the police cruiser, Long began walking in the opposite direction. These facts, together with the inferences Officer Branyan drew from them based on his experience, were sufficient to establish reasonable suspicion that crime was afoot.

Similarly, Officer Schaeffer had reasonable suspicion to believe that Long was armed and dangerous, thus justifying his frisk. *Carter*, *supra*. "An officer may conduct a *Terry* frisk of a suspect's clothing for weapons if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Commonwealth v. Kondash*, 808 A.2d 943, 948 (Pa. Super. 2002) (citation and quotation marks omitted). Here, when asked whether he had any weapons, Long told Officer Schaeffer he was in possession of a knife. *See* N.T. Suppression

- 11 -

Hearing, 1/8/15, at 45. Long's admitted possession of a weapon, coupled with the fact that he "wasn't happy to see [the police], wasn't happy to be stopped," *id.* at 48, justified Officer Schaeffer's belief that a protective pat-down was necessary.

Even if Officer Schaeffer was justified in performing a pat-down, Long argues that his seizure of the Walsh Construction gas card exceeded the limits of a *Terry* frisk.[5] Long asserts that a *Terry* frisk may not be used to discover evidence of a crime, but only to discover weapons, so that the police may perform their duties without fear for their safety. Long argues that the sole exception to this rule, the "plain feel" doctrine, does not apply here, as a credit card cannot be said to feel immediately apparent as contraband.

In support of this argument, Long relies on *In re S.D.*, 633 A.2d 172 (Pa. Super. 1993). There, an officer legally stopped the defendant and performed a pat-down for weapons. During the course of the pat-down, the officer felt a bulge in S.D.'s right pants pocket and retrieved a bag containing numerous crack cocaine vials. The trial court denied S.D.'s suppression motion. This Court reversed, citing the fact that the officer never testified as to what it was he perceived he had felt in S.D.'s pocket.

---

[5] The Commonwealth asserts in its brief that Long has waived this particular argument because he failed to raise it in his motion to suppress. We disagree. Long advanced the "plain feel" argument at the suppression hearing. *See* N.T. Suppression Hearing, 1/8/15, at 68-69.

Thus, the trial court's conclusion that the officer reached into S.D.'s pocket because he feared he had felt a weapon was not supported by the record.

While **In re S.D.** is not squarely on point, we do believe there is merit to Long's claim that that neither **Terry** nor the plain feel doctrine justified Officer Schaeffer's seizure of the gas card. However, we agree with the Commonwealth that Long's argument is ultimately mooted by the inevitable discovery doctrine.[6]

> Pennsylvania courts recognize the inevitable discovery doctrine first described by the United States Supreme Court in **Nix v. Williams**, 467 U.S. 431 [] (1984). That doctrine provides that "evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence." **Commonwealth v. Ingram**, [814 A.2d 264, 272 (Pa. Super. 2002)]. Implicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.
>
> If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, then the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct. Thus, evidence that ultimately or inevitably would have been recovered by lawful means should not be suppressed despite the fact that its actual recovery was accomplished through illegal actions. Suppressing evidence in such cases, where it ultimately or inevitably would have lawfully been recovered, would reject logic, experience, and common sense.

---

[6] Although the trial court did not rely on the inevitable discovery doctrine in denying Long's suppression motion, we may affirm the court's decision on any basis. **See Commonwealth v. O'Shea**, 567 A.2d 1023, 1028 (Pa. 1989) ("[E]ven if the suppression court did err in its legal conclusions, the reviewing court may nevertheless affirm its decision where there are other legitimate grounds for admissibility of the challenged evidence.").

*Commonwealth v. Gonzalez*, 979 A.2d 879, 890 (Pa. Super. 2009) (some citations, brackets and quotation marks omitted).

Here, regardless of whether Officer Schaeffer had obtained the gas card from Long's pocket while securing the knife, Officer Branyan would have inevitably ran a check on the license plate of the Ford F-250. The truck belonged to Walsh Construction, which Officer Branyan was aware had suffered recent thefts of vehicles, and was running with its lights on, unoccupied and blocking a driveway. Once Officer Branyan learned that the truck had been reported as stolen, the police would have had probable cause to arrest Long and the ensuing search incident to arrest would have resulted in the discovery of the gas card. Accordingly, Long is entitled to no relief.

Next, Long claims that the evidence presented by the Commonwealth was insufficient to sustain his convictions. With regard to such a claim, our scope and standard of review are well-settled.

> In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt. The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. As an appellate court, we must review the entire record and all evidence actually received. The trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part or none of the evidence. Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Benito*, 133 A.3d 333, 335 (Pa. Super. 2016) (citation omitted).

Long challenges his convictions for unauthorized use of automobiles and other vehicles and receiving stolen property. A person is guilty of unauthorized use of an automobile if he operates an automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle of another without consent of the owner. 18 Pa.C.S.A. § 3928(a). The Commonwealth must demonstrate that the defendant "knew or had reason to know that he lacked the owner's permission to operate the vehicle." *Commonwealth v. Carson*, 592 A.2d 1318, 1321 (Pa. Super. 1991). A person is guilty of receiving stolen property if he "intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a).

Here, Long asserts that the Commonwealth did not prove that he ever possessed or operated the Walsh Construction F-250 "because he was never closer than thirty feet from the truck, the gas card did not say 'Walsh Construction,' [his] fingerprints were not found in the truck, and there are other explanations for the alcohol on his breath" aside from the open can of beer found in the F-250. Brief of Appellant, at 41. Long also argues that there was insufficient evidence to prove that he possessed the requisite mens rea.

At trial, Long stipulated that the Walsh Construction F-250 was stolen on October 4, 2013, that Long was not an employee of Walsh Construction and that he did not have permission to take the truck from Walsh Construction.

The requisite knowledge that the car was stolen can be shown entirely through circumstantial evidence. *Carson*, 592 A.2d at 1321. While it is clear that mere possession without more is insufficient to show that the defendant knew or should have known that the property was stolen, other facts can make the inference of guilty knowledge reasonable. *Id.* Such circumstances include but are not limited to the unexplained possession of recently stolen property and flight from the police or other evidence indicating an attempt to avoid capture. *Id.*

In this case, the circumstances established by the Commonwelath support an inference that Long knew he was driving a stolen vehicle. First and foremost, the truck had the name "Walsh Construction" emblazoned on it, yet Long was neither an employee of the company nor an authorized user of its vehicles. Moreover, upon observing the police cruiser, Long abandoned his approach to the truck and headed in the opposite direction. Evidence of flight corroborates the inference of guilty knowledge. *Id.* at 1322. Finally, Officer Branyan smelled the odor of alcohol on Long's breath and there was an open can of beer in the F-250.

Long also claims that the Commonwealth failed to establish his possession of the truck. Long bases his claim on his assertions that: (1) he

was never less than 30 feet away from the truck; (2) the name on the gas card did not match the name on the truck; (3) the scent of alcohol on Long's breath was mere coincidence; and (4) Long's fingerprints were not found in the truck. This claim is without merit.

Long's first assertion is not supported by the record, as viewed in the light most favorable to the Commonwealth; Officer Branyan testified that Long was "within 10 to 15 feet of [the F-250] and then turned around and went the other way." N.T. Suppression Hearing, 1/8/15, at 52. The second assertion is simply disingenuous; although the gas card said "Walsh Group" and the truck bore the name "Walsh Construction," it is reasonable to infer that the two entities are the same or related. Likewise, while the Commonwealth did not present scientific proof that the alcohol on Long's breath came from the open beer in the truck, the evidence reasonably supports an inference to that effect. Finally, the absence of positive fingerprint identification is not a proper sufficiency argument. "[T]he failure of the Commonwealth to introduce . . . assertedly missing evidence . . . is not dispositive of the sufficiency question. This court has held that the totality of the circumstances will be determinative, not the presence or absence of any particular piece of evidence ordinarily indicative of [the crime in question]." **Commonwealth v. Harper**, 611 A.2d 1211, 1217 (Pa. Super. 1992).

An offender need not actually be driving a vehicle to be convicted of unauthorized use. **Carson**, 592 A.2d at 1323. Here, the circumstantial

evidence adduced by the Commonwealth in this matter was sufficient to demonstrate that Long was in possession of the F-250. Accordingly, he is entitled to no relief on this claim.

Long next claims that the verdict of the trial court was against the weight of the evidence. Long argues that "the circumstances of this case weigh in favor of concluding that [he] was stealing from the truck, not that he was in possession of or operating the truck." Brief of Appellant, at 47. This claim is waived.

After his conviction, but prior to sentencing, Long filed a "Motion for Extraordinary Relief" in which he sought an arrest of judgment, ostensibly on weight-of-the-evidence grounds. However, in the body of his motion and at the hearing on the motion, Long presented what amounted to a sufficiency argument. The court denied the motion on procedural grounds and proceeded with sentencing. Long's subsequent post-sentence motion sought only the modification of his sentence.

Pursuant to Pa.R.Crim.P. 607(A), a claim that the verdict was against the weight of the evidence must be raised with the trial judge in a motion for a new trial, either before sentencing, or in a post-sentence motion. Here, Long did not present a motion for a new trial, but rather sought arrest of judgment. "[T]he assertion that the verdict is against the weight of the evidence is not a proper consideration in passing on a motion in arrest of judgment[.]" *Commonwealth v. Kirkman*, 399 A.2d 720, 722 (Pa. Super. 1979). Moreover, a motion for extraordinary relief under Pa.R.Crim.P. 704

"shall have no effect on the preservation or waiver of issues for post-sentence consideration on appeal." Pa.R.Crim.P. 704(B)(3). Because Long failed to properly preserve his weight claim, it is waived for purposes of appellate review.

In his final claim, Long challenges the discretionary aspects of his sentence. Such a claim does not entitle an appellant to review as a matter of right. *Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015). Rather, before this Court can address such a challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.*, quoting *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011).

Here, Long preserved his claim by filing a post-sentence motion to modify his sentence. He filed a timely notice of appeal and includes in his brief a Rule 2119(f) statement of reasons for allowance of appeal. Accordingly, we must determine whether Long raises a substantial question for our review.

In his Rule 2119(f) statement, Long claims that the sentencing court relied upon impermissible factors in fashioning his above-guidelines

sentence. Specifically, Long asserts that the court considered his exercise of his constitutional right to a trial, his prior criminal record and his poverty. He also claims that the court treated certain mitigating factors, including his intellectual disability and alcohol addiction, as aggravating factors. An allegation that the sentencing court relied upon impermissible factors raises a substantial question. *Commonwealth v. P.L.S.*, 894 A.2d 120, 127 (Pa. Super. 2006). Accordingly, we will review Long's claim.

We begin by noting that we review a sentencing court's determination for an abuse of discretion. *Commonwealth v. Ventura*, 975 A.2d 1128, 1133–34 (Pa. Super. 2009), citing *Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* at 961. When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. *Commonwealth v. Hanson*, 856 A.2d 1254, 1260 (Pa. Super. 2004).

> [A] sentencing court may select one or more options with regard to determining the appropriate sentence to be imposed upon a defendant. These options include probation, guilt without further penalty, partial confinement, and total confinement. 42 Pa.C.S. § 9721(a). In making this selection, the Sentencing Code offers general standards with respect to the imposition of sentence which require the sentencing court to impose a sentence that is

> "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Thus, sentencing is individualized; yet, the statute is clear that the court must also "consider" the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing. *Id.*

*Walls*, 926 A.2d at 962–63. Where a defendant is sentenced outside the sentencing guidelines, the sentence shall be vacated if the appellate court determines it to be unreasonable. 42 Pa.C.S.A. § 9781(c). In making this "unreasonableness" inquiry, the General Assembly has set forth four factors that an appellate court is to consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

Long first argues that the sentencing court erred by taking into account his criminal history, conflating arrests and convictions, and considering his prior offenses when they had already been factored into his prior record score ("PRS"). Long notes that the court based its sentence, in part, on his "13 prior arrests . . . [a]nd he started out in juvenile court[.]" N.T. Sentencing, 9/29/15, at 12. This claim is meritless.

A court, in imposing sentence, may consider prior arrests as long as the court recognizes that the defendant had not been convicted of the prior

charges. ***Commonwealth v. Allen***, 489 A.2d 906, 914 (Pa. Super. 1985), citing ***Commonwealth v. Craft***, 450 A.2d 1021 (Pa. Super. 1982). Moreover, a sentencing court may consider a defendant's prior conviction history as long as it is but one factor in the court's decision. ***Commonwealth v. Mills***, 496 A.2d 752, 754 (Pa. Super. 1985). Here, the court considered not only Long's prior arrests and convictions (and distinguished between the two), but also considered the presentence investigation report ("PSI"), Long's long history of recidivism, his failure to take advantage of prior opportunities for rehabilitation, and the protection of society. The court's reasoning reflects the fact that Long, in addition to his juvenile history, has accumulated fourteen adult arrests, eleven convictions, eight violations and four revocations. ***See*** N.T. Sentencing, 4/14/15, at 16; Trial Court Opinion, 3/9/16, at 13. He accrued 67 infractions over the course of his numerous incarcerations. ***See*** N.T. Sentencing, 4/14/15, at 23. He was arrested for the instant offense a mere nine days after he was sentenced to two years of probation after being found to be in violation of another court's probation. ***See id.*** at 16. Finally, where the sentencing court is in possession of a PSI, it is presumed that the court was aware of and considered all relevant sentencing factors, including the defendant's rehabilitative needs and the need for protection of the public. ***Commonwealth v. Devers***, 546 A.2d 12 (Pa. 1988). Based on all of the foregoing, we find the sentencing court did not abuse its discretion in taking

into consideration Long's prior arrests and convictions in fashioning its sentence.

Long also claims that the court improperly considered certain mitigating factors as aggravating factors, specifically his drug and alcohol dependencies and the fact that he did not graduate high school. Long argues that low intelligence may not be used as an aggravating factor and that drug addiction is properly characterized as a mitigating factor. Again, Long is entitled to no relief.

First, there is nothing in the record to support Long's contention that the sentencing court used his low intelligence as an aggravating factor. Rather, when defense counsel raised Long's learning disability and the fact that he failed to graduate from high school, counsel for the Commonwealth responded that "[h]e didn't graduate from high school because of unexcused absences and denied having any disciplinary problems[.]" N.T. Sentencing, 9/29/15, at 13. The court then commented that "[w]hen you have so many arrests,[7] you can't go to school if you're in jail half the time or you're in court." Thus, it is apparent that the court was not using Long's intellectual disability as an aggravating factor, but, rather, observing the manner in which his history of criminal behavior adversely affected his education and development.

---

[7] As a juvenile, Long was arrested four times and was adjudicated three times. N.T. Sentencing, 9/29/15, at 8.

Second, although addiction is often presented as a mitigating factor in sentencing, *see, e.g., Commonwealth v. Proctor*, 156 A.3d 261, 274 (Pa. Super. 2017), Long can point to no authority for the proposition that a sentencing court may not take into consideration a defendant's habitual substance abuse as it relates to that defendant's criminal behavior. The court engaged in the following exchange with Long at his first sentencing hearing:

> THE COURT: Let me ask you a question. When you were out how did you get yourself arrested so many times? What all that about?
>
> THE DEFENDANT: Something triggers in my head when I drink. It turns me into a different person.
>
> THE COURT: Well, that's the problem. And the problem is you had a lot of chances to get help. That's why I can't see [parole to a Forensic Intensive Recovery program]. I can't see how we're going to help you.

N.T. Sentencing, 4/14/15, at 22. From this excerpt, it is apparent that the sentencing court did not treat Long's addiction, *per se*, as an aggravating factor, but, rather, considered it in the broader context of Long's lifetime of criminal behavior and repeated failure to achieve rehabilitation. As such, the court did not abuse its discretion in sentencing Long.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/6/2017</u>